**SO ORDERED.**

**SIGNED this 21 day of December, 2012.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **KEITH M. COX,**<br>**TRACEY C. COX,** | **CASE NUMBER: 11-01744-8-RDD** |
| **DEBTORS** | |

| | |
|---|---|
| **FRANCISCO QUIRINO RAMIREZ-LOPEZ,** | **ADVERSARY PROCEEDING**<br>**NUMBER: 11-00259-8-RDD** |
| Plaintiff | |
| v. | |
| **KEITH M. COX,** | |
| Defendant | |

## ORDER ON COMPLAINT OBJECTING TO DISCHARGE

Pending before the Court is the Complaint Objecting to Discharge, filed by Francisco Quirino Ramirez-Lopez on July 5, 2011; the Amended Complaint Objecting to Discharge, filed by Francisco Quirino Ramirez-Lopez on July 12, 2011 (the "Amended Complaint"); and the Answer filed by Keith M. Cox on July 18, 2011 (the "Answer"). The Court conducted a trial on the issues in Wilson, North Carolina on November 1, 2012.

## BACKGROUND

Keith M. Cox (the "Defendant") and Tracey C. Cox filed a joint petition under Chapter 7 of the United States Bankruptcy Code on March 8, 2011. The Defendant listed a lot and mobile home located at 5380 North Carolina Highway 118, Grifton, North Carolina (the "Property") as property owned solely by the Defendant in Schedule A filed with the petition. Schedule A values the Property at $90,970.00 and lists a secured claim in the amount of $79,675.00. In Schedule D, the Defendant lists Green Tree Servicing, LLC ("Green Tree") as the holder of a first mortgage in the amount of $79,675.00, secured by the Property. The mortgage to Green Tree secures a thirty year promissory note in the original amount of $89,288.19 for the purchase of a 1998 Palm Harbor 6680 manufactured home executed by the Defendant on October 1, 1998 (the "Mortgage"). The Mortgage is secured by a deed of trust granting Green Tree a security interest in the Property, recorded at Book 1647, Page 0477 in the Craven County Register of Deeds. According to the terms of the Mortgage, the Defendant was to make 360 payments of $620.80 per month beginning October 1, 1998 and ending October 1, 2028.

The Plaintiff previously worked on a tobacco farm owned by the Defendant's father. The Plaintiff spoke little English and testified through an interpreter. The Plaintiff stated when he and several of his brothers began working on the tobacco farm, the Defendant's father provided them with a house to live in. However, because there were four families living in the house, the Plaintiff began saving to purchase a home of his own. The Defendant later took over operations of the farm after his father retired. Through the course of his employment, the Plaintiff learned the Defendant was interested in selling the Property and approached the Defendant about purchasing it. The Defendant and the Plaintiff agreed upon a purchase price of $102,000.00 for the Property. The

Defendant testified that in negotiations for the sale price of the Property, he relied on the Plaintiff's statements that the Property had been recently appraised and $102,000.00 was a fair price. Further, the Defendant stated he had no knowledge of the deed of trust to Green Tree and the Plaintiff did not disclose the Property was encumbered by any liens.

The Defendant contacted an attorney in Grifton, North Carolina to memorialize the terms of the agreement in a contract for purchase of real and personal property, which was executed by the Plaintiff and the Defendant on August 20, 2001 (the "Agreement"). Pl.'s Ex. 2. Pursuant to the Agreement, the Defendant agreed to sell the Property for the total purchase price of $102,000.00. The Plaintiff made an initial down payment of $20,000.00 and the remaining $82,000.00 was to be paid over 138 months in installments of $1,000.00 each month beginning October 15, 2001, with a final payment of $563.85 due on April 15, 2013. Any delinquent payments would accrue interest at 10.00% per annum. Once the Plaintiff paid the full purchase price for the Property, the Defendant was to deliver a warranty deed to the Plaintiff, providing title to the Property was free and clear of all encumbrances other than property taxes and assessments.[1] The Agreement required the Plaintiff to maintain adequate insurance on the Property and pay all property taxes due. Not memorialized in the terms of the Agreement was the arrangement whereby the Defendant would keep the insurance policy in his name and pay all property taxes, which would be reimbursed by the Plaintiff.[2]

---

[1] Attorney Russell Houston, III, drafted the Agreement. Mr. Houston testified he had no recollection of drafting the Agreement as it took place more than ten years ago. However, Mr. Houston stated he believed he represented the Defendant in the closing.

[2] Both the Defendant and the Plaintiff testified they agreed to this arrangement for the payment of insurance premiums and property taxes as the Plaintiff did not want to place the insurance policy in his name.

3

Based on his relationship as an employee with the Defendant and his family for a number of years, the Plaintiff testified he trusted the Defendant to abide by the terms of the Agreement. The Plaintiff testified he made all payments required under the Agreement and presented evidence in the form of receipts from the Plaintiff for each payment made as well as a ledger of all payments made, including payments for insurance and property taxes. Pl.'s Ex. 19. The Plaintiff delivered his payments each month in cash to the Defendant's residence, which was adjacent to the Property. The Defendant does not dispute that the Plaintiff made all required payments required by the Agreement up until December 2010, at which time the Defendant moved from his residence and the Plaintiff was unable to contact him. At some point in the almost ten years the Plaintiff had been making payments to the Defendant, the Defendant defaulted on his payments to Green Tree. Green Tree foreclosed on the deed of trust securing the promissory note signed by the Defendant and between December 2010 and January 2011, the Plaintiff and his family were forced to move from the Property.

The Defendant testified he fully intended to honor the Agreement with the Plaintiff and deliver good title upon the Plaintiff's satisfaction of the Agreement on April 15, 2013. The Plaintiff presented evidence that had the Defendant continued paying the mortgage to Green Tree, $68,200.14 would have remained due and owing to Green Tree in April 2013.[3] The Defendant testified that at the time he entered into the Agreement he believed he would have sufficient income to satisfy the balance due to Green Tree in order to deliver clear title to the Plaintiff.[4] However, over time, the

---

[3] Based on a thirty year amortization of the principal amount of $89,228.19 with interest accruing at 7.44% per annum.

[4] The Defendant testified that after he took over operations of the farm upon his father's retirement he was grossing $350,000.00 to $400,000.00 per year. However, a drought in 2008

Defendant testified his income was sharply reduced because of poor crop production in 2008. Further, the Defendant testified that he applied neither the $20,000.00 down payment nor the additional $379.20 he received each month from the Plaintiff to Green Tree's mortgage. The Plaintiff presented evidence that had the Defendant applied an additional $320.00 each month to the Mortgage, Green Tree would be paid in full in February 2013. Pl.'s Ex. 10. Similarly, if the Defendant had applied the $20,000.00 down payment to the Mortgage on October 1, 2001 and made an additional $100.00 payment each month, the balance to Green Tree would have be paid in full in April 2013.[5] Pl.'s Ex. 11.

The Defendant testified he stopped accepting payments from the Plaintiff because he believed it was the right thing to do since Green Tree was going to foreclose on the deed of trust securing the Mortgage. The Defendant stated he specifically recalled telling the Plaintiff that the Property was not paid for and that Green Tree held a deed of trust on the Property. However, in the Defendant's deposition testimony, the Defendant stated he did not tell the Plaintiff about the loan before or at the time the two entered into the Agreement. Pl.'s Ex. 16. The Plaintiff admits he did not ask if there were any encumbrances on the Property and did not consult his own attorney or undertake independent research to determine if there were any liens on the Property.[6]

---

caused poor crop production and reduced revenues thereafter.

[5]The Plaintiff presented a number of variations in which additional payments made on the Mortgage would have reduced the Defendant's obligation and allowed the Mortgage to be paid on or before April 2013.

[6]The Court notes the Plaintiff speaks very little English and gave his testimony through an interpreter sworn under oath.

The Plaintiff filed the Amended Complaint objecting to the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(6), claiming the Defendant obtained funds by false pretenses, a false representation, or actual fraud and as well as by way of willful and malicious injury to another or property of another.  The Plaintiff filed a motion to extend the time allowed to object to the Debtor's discharge and on June 8, 2011, the Court entered an order extending the time for the Plaintiff to object to July 5, 2011.  The Plaintiff filed the original Complaint Objecting to Discharge on July 5, 2011 and the Amended Complaint on July 12, 2012.

The Defendant contends there is no evidence to suggest his actions rose to the level of false pretenses, false representations, or actual fraud or caused willful or malicious injury to the Defendant as required to prove an exception to discharge pursuant to § 523(a)(2)(A), (a)(6).

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in Section 157(b)(2) of Title 28 of the United States Code.

## ANALYSIS

Section 523(a)(2)(A) provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor for any debt,

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). The applicability of an exception to discharge is construed "narrowly 'to protect the purpose of providing debtors a fresh start.'" *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007) (quoting *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 2007)). "A plain reading of the subsection demonstrates that Congress excepted from discharge not simply any debt incurred as a result of fraud but only debts in which the debtor used fraudulent means to obtain money, property, services, or credit." *Id*.

"A creditor seeking to exempt a debt from discharge must establish all of the elements of fraud – '(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of the damages.'" *Fulcher v. Cooper (In re Cooper)*, No. 09-00035-8-JRL at 4 (Bankr. E.D.N.C. Dec. 3, 2009) (quoting *Nunnery v. Rountree*, 478 F.3d at 218)). Of the most difficult elements to prove is the intent to deceive. Case law in the Eastern District suggests that

> [u]nder a § 523(a)(2)(A) analysis: "[A] debtor will be found to have acted with the requisite intent to defraud under § 523(a)(2)(A) when, at the time the transaction occurred, it is established that the debtor, for [] personal gain, knowingly mislead [sic] the investor as to a material fact concerning the [debt]."

*Wilson v. Wall-McMahel (In re Wall-McMahel)*, No. 09-00231-8-JRL at 12 (Bankr. E.D.N.C. Sept. 16, 2010) (quoting *White v. Sigmon*, 128 Fed. Appx. 994, 998 (4th Cir. 2005)).

The facts in this case are fairly simple, the Defendant and the Plaintiff entered into the Agreement by which the Plaintiff would make a down payment of $20,000.00 and monthly payments of $1,000.00 for approximately twelve years. In exchange for all payments, the Plaintiff was to receive clear title to the Property in April 2013.

By a preponderance of the evidence, the Court finds the Defendant failed to inform the Plaintiff that Green Tree held a deed of trust on the Property securing the Mortgage. The Defendant then made representations and signed the Agreement requiring him to deliver clear title of the Property to the Plaintiff with the knowledge he had the inability to do so. The Defendant received a $20,000.00 down payment, which he did not apply to the Mortgage but used for his own personal gain, meeting the requirement of intent. *See Wilson v. Wall-McMahel*, No. 09-00035-8-JRL at 4 (Bankr. E.D.N.C. Sept. 16, 2009). The Plaintiff, having executed the Agreement and having a longstanding history with the Defendant, justifiably relied on the Defendant's representations that he would receive clear title after all payments were tendered. Additionally, the Defendant spoke little English and was disadvantaged in the bargaining process. Finally, as a result of the Defendant's fraudulent statements, the Plaintiff suffered damages as he paid the Defendant $20,000.00 down plus payments of $1,000.00 each month between August 2001 and December 2010 in addition to payment for property taxes and insurance.

Further, the Defendant made only the minimum payment of $620.80 due on the Mortgage and failed to make payments of the full $1,000.00, which would have allowed the Defendant to satisfy the Mortgage and given him the ability to deliver title free and clear in April 2013. The Court finds each time the Defendant made a payment to Green Tree on the Mortgage he made an intentional misrepresentation and defrauded the Plaintiff willfully and knowingly.

Therefore, judgment is **GRANTED** in favor of the Plaintiff in the amount of $102,000.00, which shall be excepted from the Debtor's discharge. The legal rate of interest shall accrue from January 15, 2010.[7] The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

**END OF DOCUMENT**

---

[7] Because the Court finds by the preponderance of the evidence the Plaintiff's debt is excepted from the discharge pursuant to § 523(a)(2)(A), the Court will not address the allegations pursuant to § 523(a)(6).